In the Matter of the Application of JOHN A. GARVER, as Assignee of J. B. BREWSTER & Co., Appellant, for the Appointment of a Referee.

FIFTH NATIONAL BANK OF THE CITY OF NEW YORK et al., Respondents.

1. ELECTION OF REMEDIES. Whether or not there has been an election of remedies is determined by the commencement, not by the result of an action.

2. ASSIGNMENT FOR CREDITORS — RES ADJUDICATA. The commencement of an action by a judgment-creditor to set aside an assignment for the benefit of creditors on the ground of fraud does not constitute an election by him to take in hostility to the assignment within the doctrine of the election of remedies; and although he is successful as to a portion of the property transferred to the assignee, if the judgment results in no benefit to him, he may take under the assignment notwithstanding his attack upon it, and the judgment constitutes no bar to such relief.

*Matter of Garver*, 84 App. Div. 262, affirmed.

(Argued October 7, 1903; decided November 10, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 22, 1903, which affirmed an order of Special Term denying a motion for the appointment of a referee to hear and determine disputed claims.

On or about October 11, 1895, J. B. Brewster & Co. executed an instrument in writing purporting to be a general assignment for the benefit of creditors, with preferences, to John A. Garver, appellant in this proceeding. Under such instrument Garver took possession of the property of J. B. Brewster & Co., consisting of machinery, fixtures, carriages and other personal property.

In order to set aside this assignment with preferences the respondents commenced actions against the corporation, its general assignee and the preferred creditors, in aid of their outstanding executions, and a stipulation was made that these actions should abide the result of the actions commenced by the Home Bank, which actions are as follows :

On or about November 18, 1895, the Home Bank commenced an action against John A. Garver, impleaded with J. B. Brewster & Co. and others, to have the said general assignment set aside as fraudulent and void as to it. Judgment therein was finally obtained declaring the assignment fraudulent and void as to the bank, and providing for the appointment of a receiver. Before the above judgment was obtained a temporary receiver was appointed, who, on entry of judgment, rendered an accounting and turned over all the property in his hands to the permanent receiver appointed under the judgment, who retained the same until the Appellate Division modified the judgment by striking out all provisions relating to the appointment of a receiver, affirming it in all other respects. The property coming into the hands of the temporary receiver was the non-leviable property and such leviable property as was left after the expenditure by the assignee of about $7,000 in payment of wages of employees.

Among the non-leviable property was an insurance policy on the life of J. B. Brewster for $50,000, upon which the corporation had procured a loan of $16,000, subject to which loan the policy had been assigned to James B. Cone. This assignment was declared void by the judgment before mentioned. The temporary receiver sold some of the leviable property to the amount of $5,000, and paid that amount upon

the loan of $16,000.   The permanent receiver sold more of the leviable property to the amount of  $1,375.05, at the instance of  the Home Bank, to pay  a  premium on the policy, leaving little or no leviable property and about $2,000  in cash and the policy  as the sole  assets.   This policy has since been paid to the assignee, J. B. Brewster having died.

On the accounting of the permanent receiver, the referee found that the Home Bank had no lien on the non-leviable property, including the insurance policy, and directed that all the property be restored to the general assignee.   The bank then tried to reach the insurance policy, but was unsuccessful.

It then commenced another action against the general assignee and joined the sheriff as a nominal party, for the purpose of obtaining an adjudication that it, by reason of previous judgments, had a lien upon all the then leviable property and also upon the proceeds of certain leviable property which the assignee had in his hands.

This action was dismissed upon the ground that the issue involved had previously been determined.   Claims were then filed with the assignee, and allowances claimed *pro rata*.   The assignee refused to allow the claims, and made application to the court for a referee to determine the validity of the claims. The court denied the application for a reference, and adjudicated the claims to be valid, and ordered the assignee to receive and file the claims.

The appellate Division sustained their decision, and it is from that order this appeal is brought to this court.

*James M. Beck* for appellant.   Where there exists an election between inconsistent remedies, a litigant is confined to the remedy which he first adopts.   (Bigelow on Estoppel, 673; *Morris* v. *Rexford,* 18 N. Y. 552; *Rodermond* v. *Clark,* 46 N. Y. 354; *Kinney* v. *Kiernan,* 49 N. Y. 164; *Steinbach* v. *R. Ins. Co.,* 77 N. Y. 498; *Fields* v. *Bland,* 81 N. Y. 239.)  This election is made when the remedy is invoked by the commencement of some legal proceeding. (*Burns* v. *Nevins,* 27 Barb. 493; *Morris* v. *Rexford,* 18 N.

Y. 552; *Terry* v. *Munger*, 121 N. Y. 167; *Heidelbach* v. *Bank*, 87 Hun, 117; *Ins. Co.* v. *Lawrence*, 14 Johns. 55; *Steinbach* v. *Ins. Co.*, 77 N. Y. 498; *Bank of Oswego* v. *Burt*, 93 N. Y. 233; *Goss* v. *Mother*, 46 N. Y. 689; *Fowler* v. *B. S. Bank*, 113 N. Y. 450; *Allen* v. *Roosevelt*, 14 Wend. 100.) In the case at bar the creditors, having obtained a judgment that the assignment is invalid, seek to repudiate that judgment and to claim that the assignment is valid. This they cannot do under the doctrine of *res adjudicata*. (Herman on Res Adjudicata, § 133; *Steinbach* v. *Ins. Co.*, 77 N. Y. 498; *Fields* v. *Bland*, 81 N. Y. 237; *People* v. *Chalmers*, 60 N. Y. 154; *Matter of Cantor*, 31 App. Div. 19.) The claimants received a substantial benefit as a result of claiming adversely to the assignment. (*Home Bank* v. *Brewster*, 15 App. Div. 338; *Matter of Ginsberg*, 21 App. Div. 525.)

*Henry B. Twombly, William B. Putney* and *Richard B. Kelly* for respondents. The creditors had the right to test the validity of the assignment to Garver and to seek to give their judgments priority, but receiving nothing as a result of said actions they had a right to prove their claims as creditors. (*Mills* v. *Parkhurst*, 126 N. Y. 89; *Sternfeld* v. *Simonson*, 44 Hun, 429; Bishop on Insol. Debtors, § 252.)

PARKER, Ch. J. The banks which are respondents herein were judgment creditors of J. B. Brewster & Co., a corporation which made a general assignment for the benefit of creditors, with preferences. An action was brought by one in behalf of all in aid of their outstanding executions, praying that as against plaintiff the assignment and all preferences therein should be declared null and void as to leviable property. Judgment was granted for the relief asked for in the complaint and a receiver was appointed, and was authorized to and did take control of the property from the assignee.

Subsequently the greater part of the leviable property was sold and the avails thereof devoted in the main to the pay-

ment of employees — who were entitled to be paid first by statute — and in paying a premium loan of $16,000 on a policy of $50,000 upon the life of J. B. Brewster, obtained for the benefit of the corporation, the policy being subject to that lien when assigned to one Cone. The assignment to Cone was, by the judgment to which we have referred, set aside, and it became necessary to pay the moneys advanced by Cone in order to secure the benefit of the policy to the creditors of the corporation. The proceeds of this policy, collected upon the death of J. B. Brewster, constituted all the assets of the estate that remained for distribution among the judgment creditors.

The Appellate Division modified the judgment by striking out the appointment of a receiver, and requiring him to turn over the moneys in his hands to the general assignee; but in all other respects the judgment was affirmed. The effect of this modification — after the personal property had been sold, and the avails disposed of, as pointed out — was to prevent the banks from receiving anything on account of their executions, for there was no longer any leviable property.

By this blunder in procedure the leviable property had been disposed of for the benefit of the assigned estate, and hence the only way open to the banks, which had prosecuted the litigation resulting in a fund to be distributed among the creditors, where otherwise there would have been none, was to present their claims to the assignee. But the assignee seemed to think they ought not to share with the general creditors — the beneficiaries of the banks' vigilance in prosecuting an action resulting in the setting aside of the assignment to Cone, and making necessary the distribution of the net proceeds of the policy. So the assignee took steps under the statute to have the court determine whether the judgments of the banks should be admitted as claims against the assigned estate.

The assignee made no question about the validity of those claims as against J. B. Brewster & Co. He could not well have done so, for they were established by judgments. Nor

did he claim that they had been wholly or partly paid, nor that it was inequitable that the banks should share in the distribution of money which, but for their action, would not have been available for distribution.    Instead the assignee claimed there was a rule of law which, applied to the facts detailed, would prevent the banks from obtaining an equitable share of the remaining assets.

The doctrine of election of remedies was invoked to work out the result the assignee seemed to desire.    And if it be true that when the general assignment was made it became necessary for the banks to determine whether they would take under the assignment or in hostility to it, then the assignee's objection was well founded, for the banks, promptly discovering that their claims would not be paid under the general assignment, made an attack upon it to the extent, at least, that it transferred the leviable property to the assignee.

Now whatever may be the rule in other jurisdictions it is not the law in this state that the commencement of an action to attack the validity of an assignment operates to deprive the party commencing such action from sharing with other general creditors in the proceeds of the assigned estate in the event that such action shall prove fruitless in result.

That question was before this court and carefully considered in *Mills* v. *Parkhurst* (126 N. Y. 89), in which case certain judgment creditors of an insolvent debtor brought an action to set aside as fraudulent his assignment for benefit of creditors, in which they were eventually defeated.    While an appeal was pending in this court from a judgment dismissing the complaint proceedings were taken to distribute the assigned estate, and objection was made by other creditors to the allowance of the claims of those judgment creditors upon the ground that they were proceeding in hostility to the assignment in prosecuting their action.    The trial court and the General Term were persuaded that the doctrine of election of remedies was applicable to the situation, and refused to allow the judgment creditors to share in the estate ; but in this court it was held that the doctrine had no application.    The

kernel of the very careful and somewhat elaborate reasoning by which the conclusion was logically established was that the doctrine of election of remedies applies to cases where there is by law or by contract a choice between two remedies which proceed on opposite and irreconcilable claims of right; in such a case, a party having resort to one remedy is bound by his first election, and hence barred from the prosecution of the other. But an assignment for the benefit of creditors is in no sense a contract between the debtor and his creditors, and does not depend for its validity in law upon their assent; where a debtor has acted without fraud in fact or in law, and has complied with the requirements of the statute, the assignment will stand notwithstanding the opposition of a creditor, and by such opposition the latter is not deprived of his right to a distributive share under it. And it is undoubtedly true, as the learned judge said who wrote the opinion, that a contrary rule "would come so near to lending aid and encouragement to attempts at fraudulent assignments as to render its adoption impossible." The discussion of the court in that case is alike applicable to this one, and the decision is in point and controlling.

It is suggested, however, that it is possible to found a different ruling in this case from the one made in *Mills'* case upon the fact that in *Mills'* case plaintiffs were unsuccessful, while in this case plaintiff succeeded. In other words, that where a judgment creditor elects, without justification, to attack the general assignment upon the ground that the assignor intended to cheat and defraud creditors, his claim may share in the estate after the judgment has gone against him, but if a judgment creditor *successfully* attacks a general assignment on the *same* ground he may *not* share in the distribution of a fund which may be the result of such litigation.

It has been argued that while in the first case it can no longer be said in this state that there was an election of remedies because *Mills'* case has so decided, it may, nevertheless, be said in the latter case, because in *Mills'* case plaintiffs failed to show the fraud, while in this case plaintiff succeeded.

But argument — if any there be to offer — in support of such position is fully met by authority, though it would hardly seem that authority is necessary to support the proposition that whether there has been an election of remedies is not determinable by the result of the suit, but is by its commencement.

In *Moller* v. *Tuska* (87 N. Y. 166) plaintiffs sold and delivered a quantity of sugar to parties who immediately transferred it to defendants, and then went into voluntary bankruptcy. Plaintiffs immediately brought action to recover possession of the goods on the ground of fraud, but while the action was pending proved a claim in bankruptcy as for goods sold and received from the assignee in bankruptcy a dividend thereon. Later the register in bankruptcy expunged the claim from the record on the ground that the action brought by plaintiffs was in disaffirmance of the sale, and thereafter demanded and received back the dividend. Subsequently in the action brought against the transferee to recover possession of the goods, a motion was made to dismiss the complaint on the ground that by proving the claim in bankruptcy and taking the dividend plaintiff affirmed the sale and had no longer any right to the goods. The motion was granted, but the General Term and this court were of a different opinion, the ground of the decision being that as plaintiffs had on discovery of the fraud an election of remedies — either to disaffirm the sale and recover the property or to sue for the principal — they manifested their election by *bringing the action* to recover the possession of the goods, and were bound by such election, and while they subsequently presented their claim to the assignee, who accepted it and paid a dividend thereon, nevertheless, because of the election necessarily made by plaintiffs in the commencing of their action, there was no debt on the part of the estate in bankruptcy to them, and the assignee was without power by his acceptance of the claim and payment of a dividend to create a debt where none existed, and hence could not affect the estate by an attempt to assent to a rescission of the election.

It is, therefore, the settled law of this court that an election of remedies is determined by the commencement of an action, and not by the result of it, and *Mills' Case (supra)* requires the holding that the commencement of an action to set aside an assignment on the ground of fraud does not constitute an election to take in hostility to an assignment, within the doctrine of election of remedies, and hence a creditor may take under the assignment notwithstanding his attack upon it.

Since the foregoing was written it has been suggested for the first time that it is not after all the doctrine of election of remedies that has been invoked, but a remedy without a name that works out the same result. It is conceded that this new remedy could not be applied in *Mills' Case (supra)*, and it should be conceded that if it could not be applied in that case it should not be in this, for very obvious reasons. The only difference between that case and this is, that in that one the action failed, in this it succeeded — which means that in that case the assignor was not guilty of fraud, while in this case the assignor was adjudged guilty of fraud. But in the first case the court pointed out that the creditor should not be deprived of his share of the assets for bringing an unsuccessful litigation, because to do so would lend " encouragement to attempts at fraudulent assignments." It is safe to say that that reason is certainly as applicable to a case where the fraud both exists and is proved. Otherwise the legal situation would be : It is well to bring an unsuccessful action at great cost to the fund in order to discourage fraud ; but it is not well to discourage fraud too much, so be careful not to establish it, for a penalty is visited upon one who brings such an action and succeeds.

It is said that the doctrine of *res adjudicata* has application to this situation, and will so operate as to deprive plaintiff of its share of the fund that would have no existence but for its litigation.

There have been two adjudications prior to this one. In the first place it was adjudicated between J. B. Brewster & Co. (before the assignment) and the Home Bank that J. B. Brew-

ster & Co. was indebted to it.   The judgment into which that litigation ripened stands.   Its validity as an adjudication is not challenged, and cannot be; and it has never been paid. That being so, the court has no power to deprive the plaintiff in that judgment of its share in the general assets of J. B. Brewster & Co., for the judgment establishes the claim, and carries upon its face the right to share with other claims in the assigned estate.

The second adjudication was made in an action brought by the Home Bank against the assignor, J. B. Brewster & Co. and the assignee, and it adjudges that the assignor was guilty of fraud which rendered the assignment void as to the bank, and set aside a transfer of a policy of insurance, a part of the proceeds of which constitute the entire assets now to be distributed.   While the court adjudged necessarily that the bank had the right to pursue the remedy which it did, it did not attempt to determine that the bank had no other remedy, and that should it fail to secure money enough by that proceeding to satisfy its claim, it could not resort to other proceedings to reach the property, if any should be discovered, of the assignor, and to share in the distribution of the assigned estate; and that being so, it is difficult to see how it can be said that the judgment in that action affects in any way the valid judgments which the bank now properly insists should share in the distribution of the fund among the general creditors.

The order should be affirmed, with costs.

BARTLETT, J. (dissenting).   A reference to some facts, in this complicated case, is essential for the purpose of making clear the points I seek to raise.   The chronology is important.   The firm of J. B. Brewster & Company, carriage manufacturers in the city of New York, made a general assignment for the benefit of creditors to John A. Garver on the 11th day of October, 1895.   Prior to that time several banks and the Spring Perch Company, creditors of the assignors, had recovered judgments at law on their claims and issued executions which were then outstanding in the hands of the sheriff.

Shortly after the execution of the general assignment and transfers these judgment creditors brought separate actions in equity attacking the general assignment and other transfers of property as fraudulent; also in aid of the executions in the hands of the sheriff, it being alleged that the general assignment and other transfers were obstacles to making the levy upon such of the assigned property as was subject thereto. It was thereupon stipulated that the suit of the Home Bank, which was begun in November, 1895, should be tried and the others abide the result.

It was conceded at the trial of this latter suit that the assignee was not guilty of intentional fraud in connection with said assignment and transfers in which he was concerned.

The suit of the Home Bank resulted in a decision setting aside the general assignment and transfers attacked as fraudulent, as to the bank, thus removing all obstacles to an immediate levy of the executions.

It is at this point that we encounter irregularities of practice resulting in wasting the assets of this estate to a very large extent. The Special Term judgment under this decision was entered on July 10th, 1896. The plaintiff erroneously treated the action as a judgment creditor's suit after execution returned unsatisfied instead, as it really was, an action to remove obstacles to the levying of executions outstanding under judgments at law. The result of this error was the entry of a judgment which extended the temporary receivership (a temporary receiver having been appointed, *pendente lite*, at the time the action was begun) to a permanent receivership then created of all the property of the assignors, including non-leviable property, over which the court had no jurisdiction in that action. The judgment further provided that the temporary receiver should account and pay over to the permanent receiver the assets in his hands. Upon appeal the Appellate Division modified this judgment by striking out the provisions as to a receivership, thereby leaving the judgment in proper form, the leviable property to be redelivered to the assignee " to the end that the plaintiff may levy its executions

upon such property and sell the same to satisfy such executions or judgments upon which they were issued." The judgment was so amended by the Appellate Division May 4th, 1897.

It thus appears that at the time of the Special Term judgment, July 10th, 1896, the judgment creditors were at liberty, had they followed the proper practice, to issue their executions against the leviable property, and a similar opportunity was afforded them when the Appellate Division modified the judgment, as above stated, May 4th, 1897.

It is apparent that these judgment creditors were not content to follow leviable property which was in existence at that time, but were reaching out for assets that could not be dealt with in aid of the executions. After the Special Term judgment had been so modified the plaintiff entered an order of reference to take and state the accounts of the permanent receiver. The referee in this accounting made his report December 2nd, 1897, in which he found, among other things, that the plaintiff had no lien upon the non-leviable assets, including a life insurance policy for $50,000 on the life of J. B. Brewster, and directed all the property to be restored to the assignee. Thereupon the plaintiff made a motion at Special Term to set aside and disaffirm the report of the referee. At the same time a motion was made by the assignee to overrule the exceptions and confirm the report. The Special Term sustained the exceptions of the plaintiff and directed the permanent receiver to pay to the sheriff of the county of New York the balance of cash in his hands, to be applied on account of plaintiff's executions, and to deliver to the sheriff carriages and lumber to the end that the same might be sold to satisfy the executions. It was further ordered that the receiver should deliver the policy of insurance to the defendant upon receiving the sum of $6,272.25 from the proceeds thereof. The defendant appealed from this order to the Appellate Division, where it was reversed, and the report of the referee in all respects confirmed. (33 App. Div. 330.) The plaintiff appealed from this latter order to the Court of

Appeals, where the appeal was dismissed on the ground that it was an order in the action and not appealable. (159 N. Y. 526.) This order was entered about April 25, 1899.

Early in November, 1898, after the Appellate Division had confirmed the report of the referee, the permanent receiver, after the defendant had made a motion to punish him for contempt for failure to comply with the directions of the referee's report, paid over to the assignee the sum of $866.86, and also delivered to him certain carriages. We thus have leviable assets in the hands of the assignee at this time.

It appears that on November 18th, 1898, after due notice, the assignee sold all of said carriages at public auction, receiving therefor the sum of $2,219.90, which shows clearly the amount of leviable assets in the hands of the assignee, and which, with a quantity of lumber, had theretofore been in the possession of the permanent receiver ever since the Special Term judgment of July 10th, 1896. During this entire period there was no obstacle to levying under the executions.

It is argued that the leviable property having been disposed of for the benefit of the assigned estate, these judgment creditors, who had prosecuted litigations resulting in a fund to be distributed among the general creditors where otherwise there would have been none, are entitled to come in and share therein with the other general creditors. A few more facts will shed light at this point. Prior to the judgment of July 10th, 1896, the court made an order upon the joint affidavit of the temporary receiver and assignee, authorizing them to pay out of the funds in their possession the sum of $16,000.00, constituting a lien on the said policy of life insurance, together with interest thereon, and to hold the policy jointly during the pendency of the action; the interest amounted to $1,048.00. This sum of $17,048.00 was accordingly paid to the American Deposit and Loan Company, the temporary receiver contributing $5,000.00 and the assignee $12,048.00. The temporary receiver and the assignee were at that time in joint control of the estate, the action not having proceeded to judgment in the Special Term.

It appears in the accounting of the permanent receiver before the referee that the assignee advanced the further sum of $3,662.76 on account of premiums due on the said policy, making with said sum of $12,048.00 the total of $15,710.76 that he advanced to protect the policy.

It is thus established that the assignee had made the greater part of the advances necessary to protect the policy of life insurance, and would have had no difficulty in caring for the same entirely had it not been for the fact that he was improperly deprived of the full control of the possession of the assigned estate by a judgment that was unauthorized by law and was practically set aside by the Appellate Division, that learned court having declared the receivership and the removal of the estate from the assignee's control to be wholly irregular.

I have before stated that the erroneous practice of the plaintiff in the Home Bank case had to a great extent wasted this estate. The attorney for the temporary receiver was awarded the sum of $1,028.30 for counsel fee and disbursements; the attorney for the permanent receiver was awarded the sum of $1,118.38 as counsel fee and disbursements; the referee received the sum of $300.00 for his services; the assignee also states in his affidavit in this proceeding that the estate has been put to other very great expense by reason of the litigation arising from this irregular practice.

These general statements of the assignee will be better appreciated when it is understood that the Home Bank began a second action against the assignee and the sheriff of the county of New York, wherein it demanded, in a complaint verified December 20th, 1899, the following relief: (1) That it may be adjudged and determined that the plaintiff the Home Bank had and has a lien upon all leviable property of said J. B. Brewster & Company, which has come into the hands or possession of the defendant Garver, and which was in the city and county of New York at the time of the issuing of the several executions hereinbefore referred to, and that the said lien attach to and follow the proceeds of the said leviable property which has come into the possession of the said

defendant Garver; (2) that the defendant Garver account for and deliver and pay over to the sheriff of the county of New York all said leviable property or its proceeds as may be sufficient to satisfy the said executions upon the judgments recovered by the plaintiff against J. B. Brewster & Company hereinbefore set forth; (3) for further relief.

The action was carried through the courts with this result: The Special Term dismissed the complaint; the Appellate Division and this court affirmed the judgment. (172 N. Y. 632, without opinion.)

The facts of this case thus disclose that the judgment creditors, throughout all of these litigations, were confined simply to their remedy to reach leviable assets; that they failed to properly pursue it and neglected to lay hold of such assets in the possession of the permanent receiver and the assignee when no obstacles stood in their way of enforcing the executions in the hands of the sheriff. It remains to consider whether on this state of facts, these judgment creditors are estopped, by years of wasting litigation, from proving their debts as general creditors in the assignment proceedings.

It has been frequently held that a creditor who receives any benefit under a general assignment cannot afterwards attack it. It would seem, from parity of reasoning, that a creditor who has successfully attacked the assignment and other transfers and had them set aside as fraudulent as to him; who has had the way opened to him to enforce his executions at law, and who has failed to realize valuable assets because he did not avail himself of the remedy at law placed in his hands, should also be estopped.

It is apparent that the technical rule as to election of remedy, illustrated by a long line of decisions, has no application to the present case. I refer to those authorities which deal with parties between whom existed a relation created by contract, and in some of which the plaintiff rescinded the contract and brought replevin for goods procured by fraud and in others stood upon the contract. (*Morris* v. *Rexford*, 18 N. Y. 552; *Kinney* v. *Kiernan*, 49 N. Y. 164; *Moller* v.

*Tuska*, 87 N. Y. 166 ; *Rodermund* v. *Clark*, 46 N. Y. 354, and many other cases.)

In the case before us the relation between the parties is not contractual, but is created by law — by the statute which provides for the execution of general assignments for the benefit of creditors and the distribution of estates thereunder.

This court has held (*Mills* v. *Parkhurst*, 126 N. Y. 89) that it should be open to any creditor to attack the general assignment on the ground of fraud, and if he fails he may, notwithstanding this futile effort, prove his debt in the assignment proceeding.

This decision obviously rests on considerations of public policy which permit the attack and the further fact that the attacking creditor had not disturbed the assignee in the custody and management of the estate, as he was defeated.

In such a case there is no election of remedy by the mere beginning of the action, as the rights of the creditor are determined by the result of the action. If he fails he may still prove his debt under the general assignment. If the creditor succeeds in his action and enters final judgment, what is the logical, legal result? In beginning his action, as we have seen, he is not held to the strict rule of election of remedy, but he must abide the result.

In the case before us the plaintiff is confronted by its own final judgment securing to it the relief for which it sued, to wit, the removal of obstructions to its execution in the hands of the sheriff and permitting that officer to levy on all personal property subject thereto. The plaintiff is thereby estopped by the doctrine of *res adjudicata ;* it is not a question of election of remedy, but a remedy exhausted, pursued to a final judgment of record, declaring the general assignment void as to it and granting the relief for which it prayed. A judgment bars any action or proceeding inconsistent with its provisions. (*Steinbach* v. *Relief Fire Ins. Co.*, 77 N. Y. 498; *Fields* v. *Bland*, 81 N. Y. 239.)

In the case 77 N. Y. 498 (*supra*) it was held that when a party has elected to sue upon a written contract and has been

defeated, he cannot thereafter bring an action to reform the contract.    Judge EARL said (p. 502) : " This is a case, it seems to me, where the doctrine of *res adjudicata* must apply, and bar a recovery, unless plain principles of law, which have always been regarded as important in the administration of justice, are disregarded."

In the case at bar the plaintiff came into court and said, in substance, it had a judgment at law, with execution in the hands of the sheriff ; the general assignment was an obstacle to a levy ; its removal was asked.    The court by judgment granted this relief, and must not the doctrine of *res adjudicata* be applied, unless plain principles of law are disregarded? The uncontradicted facts of this case, already recited, show that for a long period of time the plaintiff failed to levy on personal property when it might have done so, every obstacle having been removed by the decision and judgment of the court.

No case has been called to my attention in this court holding that where a creditor has proceeded to final judgment and succeeded in having a general assignment declared fraudulent as to him, he having received substantial benefits under his judgment, or was entitled to the same, that nevertheless he could come in as a creditor and prove his claim thereunder.

Two cases in this court were cited by the courts below in favor of the plaintiff.    In the case of *Mills* v. *Parkhurst* (126 N. Y. 89) a creditor sought to prove his claim after having failed in his attack upon the assignment.    All that was actually decided, or could be determined, was that such a creditor might prove his claim, notwithstanding his unsuccessful suit.    The court said (p. 95) : " A creditor's only alternative, if he is not content to take what would thus come to him, is to endeavor to set aside the deed or assignment if he deems himself possessed of the requisite evidence of its invalidity at law.    If there is any election for him to make it can only be with respect to what remedies may be available to him in order to right himself upon his judgment against the assignee and to avoid the assignment.    *    *    *    It in no wise militated against the right of the appellant, if defeated

upon that issue, to share in the assigned estate on the basis of the distribution provided in the debtor's deed to his assignee."

The reasoning of this opinion clearly recognizes the possibility of a situation where a creditor, succeeding in his attack upon the assignment, may place himself in a position which would preclude him from proving his claim.

The case of *Groves* v. *Rice* (148 N. Y. 227) is distinguishable in its facts from the case before us. In that case the creditor was held to have so recognized the assignment, for the purpose of gaining an advantage thereunder, that he was estopped from attacking it. It is a case where the doctrine of estoppel was applied in order to protect the assignee and creditors.

In the case before us the doctrine of *res adjudicata* controls.

I am of opinion that the fund now in the hands of the assignee is only a small residue, preserved to the estate, notwithstanding the litigations of the judgment creditors, by the persistent efforts of the assignee to save something for the general creditors after the unwarranted and unnecessary receiverships, accountings and unauthorized actions had run their asset-wasting course.

The orders of the Special Term and Appellate Division should be reversed and the claims of the respondents disallowed, with costs.

O'BRIEN, MARTIN, CULLEN and WERNER, JJ., concur with PARKER, Ch. J.; VANN, J., concurs with BARTLETT, J.

Order affirmed.