**68** Schmoll, Inc., *v.* United States & Australasia S. S. Co.

Second Department, April, 1924.　　　　[Vol. 209

Armond Schmoll, Inc., Appellant, *v.* United States and Australasia Steamship Company, Respondent.

Second Department, April 3, 1924.

Ships and shipping — action for failure safely to carry and deliver goods — motion to strike out defense that contract for carriage was made with another than defendant denied — principal and agent — election of remedies — motion to strike out defense that plaintiff is suing defendant's principal for same cause denied — election to sue principal instead of agent with full knowledge of relation irrevocable — immaterial that it does not appear that other action was begun first or that it had not proceeded to judgment.

In an action for the failure to safely carry and deliver goods, a motion to strike out a separate defense in the answer, that the contract for carriage was made with another than the defendant with the full knowledge of the plaintiff, must be denied, as such defense is germane to the controversy, is very substantial and goes to the merits of the action; and a motion to strike out another separate defense, that the plaintiff, with full knowledge of the relation, is suing the defendant's principal in another court for the same cause, which principal admits that, if anybody is liable, it is liable, must likewise be denied, for an election to sue a principal rather than his agent with full knowledge of the relation is irrevocable.

As a matter of pleading, it is immaterial that it does not appear that the action against the principal was begun first or that it has proceeded to judgment.

Appeal by the plaintiff, Armond Schmoll, Inc., from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 30th day of January, 1924, as resettled by an order made at the Queens Special Term and entered in the office of the clerk of said county on the 18th day of February, 1924, denying a motion to strike out the first and second separate defenses in the amended answer of the defendant upon the ground that such defenses are insufficient in law.

*Neil P. Cullom* [*Hobart S. Weaver* with him on the brief], for the appellant.

*John L. Galey,* for the respondent.

Manning, J.:

The action is brought to recover damages alleged to have been sustained by the plaintiff through the negligence of the defendant steamship company in failing and neglecting to safely carry and deliver certain merchandise intrusted to its care for transportation from Sydney, Australia, to the city of New York. The merchandise in question consisted of 237 bags of wet, salted hides, which were consigned to the order of the National Bank of Commerce of New York city, and the bank subsequently assigned its claim to the plaintiff.

The amended answer, after setting forth certain denials of material allegations of the complaint, contained six separate defenses, only two of which, however, are attacked on the motion to strike out, namely, the first and second, so that the other separate defenses are not material to a discussion of the appeal now before us.

The first separate defense reads as follows:

" VIII. The vessel by which the packages referred to in the complaint were received and carried was owned and operated by the United States of America acting through the United States Shipping Board, and not by this defendant. The bills of lading which constituted the contract under which the packages were received and carried were not issued by or in behalf of the defendant, but were issued for and in behalf of said owner and operator of the vessel, and were and on their face purported to be, a contract between the owner and operator of the vessel and the shipper and consignee and not a contract between the shipper and the defendant, all of which, at all times mentioned in the complaint, was known to all the parties to the agreement of carriage and to the plaintiff. Suit on any claim which the plaintiff might have by reason of the matters alleged in the complaint can only be brought against the United States of America or the United States Shipping Board in accordance with the provisions of the Act of Congress of March 9, 1920,* and there is no liability on the part of this defendant and no right or cause of action against this defendant under the alleged agreement referred to in the complaint."

It does seem reasonably clear that, if the defendant can prove the statements contained in this allegation, the separate defense pleaded presents an absolute defense to the plaintiff's claim. The appellant, however, maintains that the allegation is wholly insufficient, for the reason " that it carefully refrains from alleging that the contract sued on disclosed the name of the principal, to wit, the United States Government." The contract of carriage here, as shown by the bill of lading, does not contain the defendant's name at all in any contractual capacity. It is true that upon the side of the paper there does appear certain printed matter, which seems to be nothing more nor less than an advertisement of the " U. S. & A. Lines, Inc., Steamship Agents; " but the bill of lading itself nowhere is signed or executed by the lines or any officer thereof. The paper is apparently signed " For the Captain," by the firm of " Dalgety and Company, Limited, W. D. Albig, N., Manager's Agents." In order to entitle the plaintiff to recover in this action it would be incumbent upon it to prove that the defend-

---

* See 41 U. S. Stat. at Large, 525, chap. 95, known as the Federal Suits in Admiralty Act, or as the Federal Admiralty Causes Act.— [REP.

**70** SCHMOLL, INC., *v.* UNITED STATES & AUSTRALASIA S. S. CO.

Second Department, April, 1924. [Vol. 209

ant was the operator of the vessel, and that the captain was authorized to act for it in receiving the particular goods shipped. The separate defense is very clearly and distinctly worded, and not only denies that the defendant was the owner or operator of the ship, but alleges also that the shipper knew who the actual owner and operator was, and knew with whom it was contracting, and that it was not the defendant; and that all of the facts were well known to the shipper and to the plaintiff when the contract of shipment was made. If this be the fact, then, certainly, the first defense is germane to the controversy, is very substantial, goes to the merits of the action, and should not be stricken out.

The second separate defense deserves more serious consideration. Any doubt which may exist concerning its substantial character, however, is the result of a conflict of decisions rendered by our courts upon the much-discussed and somewhat misunderstood doctrine as to what constitutes an election. The second defense, as set forth in the answer, has abundant and respectable support in the more recent authorities, and hence we think the court below was correct in refusing to strike it out. This second defense reads as follows:

" IX. The vessel by which the packages referred to in the complaint were received and carried was owned and operated by the United States of America acting through the United States Shipping Board, and the United States of America was the principal in whose behalf any contract relating to the receipt and carriage from Sydney to New York of the packages referred to in the complaint was made. After the arrival of said packages at New York the plaintiff, with full knowledge that the United States of America was the principal in whose behalf the contract relating to the carriage of the said packages was made, caused a libel to be filed in admiralty in a suit brought against the United States of America in the United States District Court for the Southern District of New York, under the Act of Congress of March 9, 1920, in which libellant charged that the United States of America was the owner and operator of the steamship ' Bellbuckle,' on which the goods were carried, and that said United States of America received on board the steamship the goods referred to in the complaint and made the agreement described in the complaint herein, and that said United States of America failed to deliver the merchandise in good order and condition. Said libel was duly verified by the treasurer of the plaintiff and process thereunder, on information and belief, was issued against the United States in accordance with the provisions of the Act of March 9, 1920. The United States thereupon filed an appearance and an answer in

said suit admitting that it owned and was operating the steamship 'Bellbuckle' at the times in question and that the packages referred to in the complaint were shipped on its said vessel to be carried to New York and delivered unto order of the National Bank of Commerce, but denying that it negligently or wrongfully delivered the goods in bad condition. Various motions have been made relating to discovery of the facts and circumstances of libellant's claim, which the respondent attempted to obtain by means of interrogatories attached to its answer, and said suit is still pending, and is on the calendar of the United States District Court for the Southern District of New York awaiting trial. On information and belief, the plaintiff has elected to proceed against the United States of America as principal and not against the defendant, and plaintiff is now barred from proceeding against this defendant in this or any other action."

This separate defense is interposed by the defendant upon the theory of an election of remedies by the plaintiff, the assertion being specifically made that the plaintiff is suing upon the same contract in another court upon the same cause of action, and to recover the same damages, for the same negligent act, and that, consequently, it is unjust and improper to allow the plaintiff to maintain two suits for the same cause of action — one against the principal, and the other against the agent, whom the principal is *obligated to protect.* I think there is considerable force and merit in this contention. The separate defense, as pleaded, expressly alleges that the vessel upon which the merchandise was shipped was owned and operated by the United States of America, as principal of the contract alleged in the complaint, and that after the arrival of the goods in New York, the plaintiff, with full knowledge that the United States was such principal, and in whose behalf the contract relating to the carriage of the goods was made, caused a libel to be filed in admiralty, and a suit brought against the United States of America, alleging that the United States was the owner and operator of the vessel on which the merchandise was shipped and carried, and claimed damages for the same cause of action as is set forth in the present suit.

The appellant argues that it does not appear that the suit against the government was begun prior to the present suit; nor does it appear that the suit against the government has proceeded to judgment; and hence, the action in the Federal court was not an election of remedies, and, therefore, the second defense is of no avail to the defendant and should be stricken out.

I cannot agree with either proposition, for assuredly the defendant should be permitted to plead and to show that the plaintiff in

**72** SCHMOLL, INC., *v.* UNITED STATES & AUSTRALASIA S. S. CO.

Second Department, April, 1924.          [Vol. 209

this case is actually prosecuting its action against the United States, and at the same time seeking to prosecute a similar action against the defendant, as agent of an undisclosed principal who is in fact disclosed. The rule applicable to this situation is stated in *Tuthill* v. *Wilson* (90 N. Y. 423, 428), as follows: " The vendor could not enforce his claim against both the principal when discovered and the agents who contracted in his behalf. Granting that each was liable, both were not, for both could not be at one and the same time, since the contract could not be the personal contract of the agents, and yet not their contract but that of the principal. The vendor had a choice and was put to his election. (*Meeker* v. *Claghorn*, 44 N. Y. 351; *Addison* v. *Gandassequi*, 4 Taunt. 574; *Curtis* v. *Williamson*, L. R. 10 Q. B. 57.) The rule is well stated in Leake's Digest, 503-4, that ' if, after discovery of the principal, the creditor elect to hold the agent liable, and act accordingly in a manner to affect the principal, he would be precluded from afterward charging the principal. He has the right of election as to which of them he will hold responsible, but having once made an election he is bound by it.' "

It may be argued that in this particular case the doctrine of election of remedies is not applicable. Strictly speaking, this may be so; but surely, whether it be an election of remedies, or an election of parties — if there be such a thing — we have before us on this motion the undisputed fact that a suitor, having a perfectly good claim against the principal debtor, under a written contract, brings two actions: one in the Federal courts against the principal, who appears therein, admitting responsibility, but denying liability; and the other in the State courts, wherein he deliberately, and with full knowledge of all the facts, attempts to enforce liability on the same cause of action against the agent. The question, therefore, is: Can the agent, in defending himself against such a claim, set up the pendency of the other action against his principal? It is true there are numerous authorities that a debtor will not be held to have made an election in favor of the principal, where he has proceeded against the agent without full knowledge of the facts, yet the weight of authority, both in England and in this country, is that where an election has been made, with full knowledge of the facts, it is controlling, and that where the facts are known there is a duty to elect.

Counsel for the appellant, in relying upon the case of *Georgi* v. *Texas Co.* (225 N. Y. 410), is very insistent that the case is a complete authority for the proposition that it must appear that the action against the principal has proceeded to judgment before the doctrine of election can be invoked. As I read that

case, however, the principles enunciated are in accord with the position taken by the defendant in the present case. Judge CRANE said (at p. 412): " When a person contracts with another who is in fact an agent of an undisclosed principal, he may upon discovery of the principal resort to him or to the agent with whom he dealt, at his election, but if after having come to a knowledge of all the facts he elects to hold the agent, he cannot afterwards resort to the principal. * * * [p. 417]: There is, however, much virtue in this rule of election; it serves a good purpose, is well known and has become firmly embedded in our procedure by the many decisions in this and other States. The plaintiff, therefore, by reason of his assignor's action in determining to follow the agent for the purchase price instead of the principal after having full knowledge of all the facts is barred upon the evidence here presented from recovering in this action against this defendant."

In actions of this kind, however, I think the general tendency of recent judicial decisions is to the effect that where an obligation is sought to be enforced under a contract executed by an agent on behalf of an undisclosed principal, the party suing must determine whether he will sue the principal or the agent, and when such election is made by bringing suit with full knowledge of the facts, it is binding. The general rule is aptly stated in 21 Lawyers' Reports Annotated (N. S.), 786 [note]: " The weight of authority also holds that, after disclosure of the agency and the identity of the principal, it becomes a duty of the creditor to elect, within a reasonable time, which of the two he will look to to carry out the agreement of the agent. This election, when once made, is irrevocable, and does not depend upon the satisfaction of the claim."

It is stated in *Matter of Garver* (176 N. Y. 386, 394): " It is, therefore, the settled law of this court that an election of remedies is determined by the commencement of an action, and not by the result of it." See, also, the case of *American Woolen Co.* v. *Samuelsohn* (226 N. Y. 61, 66), where the court said: " An election of remedies takes place when a choice is exercised between remedies which proceed upon irreconcilable claims of right. When an election is made between such claims, with full knowledge of all the facts, an action may not thereafter be maintained upon the inconsistent claim. (*Georgi* v. *Texas Co.*, 225 N. Y. 410; *Mills* v. *Parkhurst*, 126 N. Y. 89; *Droege* v. *Ahrens & Ott Mfg. Co.*, 163 N. Y. 466.) " See, also, the case of *Cherrington* v. *Burchell* (147 App. Div. 16), where the court held that the plaintiff could not sue the agent and a disclosed principal and recover against both.

It is apparent from the record here that the separate defenses pleaded and objected to are subject to proof and that a question

of fact will be presented under the second separate defense as to whether there was an election. Under these circumstances, a motion to strike out should *not be granted.*

There is nothing in the suggestion of the appellant here that the making of an election would, in any wise, prejudice its position until the question as to who made the contract has been definitely settled. There is no dispute at all in this case but that the United States has been sued as principal; that it admits the making of the contract, and that if anybody is liable, it is liable. Consequently, there is no danger of the plaintiff's being unable to establish the contract against the principal and at the same time forfeiting its right against the alleged agent by bringing a suit. The binding effect of the contract on the principal is as fully determined by the judicial admission of the principal in the pleading, as if a judgment had been rendered.

I think this covers the principal questions before us on the present appeal, and I have reached the conclusion that the order denying the motion to strike out the separate defenses was entirely correct under the facts and circumstances disclosed in this case, and that it should be upheld.

I, therefore, suggest an affirmance of the order appealed from, with ten dollars costs and disbursements.

KELLY, P. J., KELBY, YOUNG and KAPPER, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.