CEDAR RAPIDS INSURANCE COMPANY, Appellee, v. WILLIAM BUTLER *et al.*, Appellants.

1.  **Corporations:** SUBSCRIPTION TO STOCK: FRAUD: LACHES: RELIEF. The defendants were induced, through the misrepresentations of the general agent of the plaintiff company, to purchase certain shares of its stock. Soon after the defendants acquired knowledge of the fraudulent character of the representations made to them, the company decided to reinsure its risks, and retire from business, and the defendants allowed the settlement of the company's business to proceed for nearly four years with the knowledge that they appeared to be stockholders, and that a note and mortgage given in consideration of their stock were apparently valid obligations. They expressed dissatisfaction with the manner in which they had been treated, and a desire to get rid of their stock, and secure the return of said note and mortgage, but at no time made an unequivocal attempt to rescind their contract of membership in the company. *Held*, in an action brought by the company upon said note and mortgage, that conceding that the representations made to the defendants would have entitled them to a rescission of their contract of purchase had they acted with diligence, they were not now entitled to such relief.

2.  **Pleading:** PRACTICE IN SUPREME COURT. The defense of laches was not interposed to the defendants' claim for a rescission of their contract by reply to the defendant's answer, but no objection having been raised to its consideration in the district court, *held*, that it could not be raised for the first time in the supreme court.

*Appeal from Page District Court.*—HON. H. E. DEEMER, Judge.

FRIDAY, MAY 29, 1891.

ACTION in equity to recover the amount of a promissory note, and for the foreclosure of a mortgage given to secure its payment. There was a trial by the court, and a decree in favor of the plaintiff as prayed. The defendants appeal.—*Modified and affirmed.*

*W. W. Morsman*, for appellants.

*Harl & McCabe*, for appellee.

ROBINSON, J.—The plaintiff is a corporation, organized in the year 1878, for the purpose of doing an

1. CORPORATIONS: subscription to stock: fraud: laches: relief.

insurance business. Its authorized capital stock was one hundred thousand dollars, of which one-fourth was paid up. In December, 1880, the authorized capital stock was increased to two hundred thousand dollars. One-fourth of the increase was paid for, and certificates for the full amount authorized were issued to the stockholders who had made the payments thereon. In September, 1881, and for some time thereafter, one W. G. Albright was an agent of the plaintiff. There seems to be some conflict in the evidence as to the powers he was authorized to exercise, but for the purpose of this case he must be held to have been a general agent. In the month named an arrangement was made by which he was authorized to sell for the stockholders one hundred and fifty thousand dollars of the stock they held at a premium of twenty-five per cent. He was to be paid by the company for his services in making such sales, and one-fifth of the premium received was to be paid into the treasury of the company. Acting under that arrangement, Albright secured from certain residents of Clarinda subscriptions to the stock of the company in considerable amounts. Among the persons who so subscribed were the defendants, William and Jacob Butler, who, as partners, took twenty shares of one

hundred dollars each, for which they agreed to pay twenty-five hundred dollars. To pay for such shares the defendants named made to the plaintiff the note in suit for twenty-five hundred dollars, and the mortgage, the foreclosure of which is demanded. In December, 1882, the stock of the company was reduced to one hundred thousand dollars, the stock taken by the Butlers was reduced one-half, and credits for that reduction to the amount of one thousand dollars were indorsed on the note. The business of the company did not prosper, and in December, 1884, it decided to reinsure its risks, and retire from business; and since that time it has not been taking risks, but has been settling and closing its business. This action was commenced in August, 1888, and is against William and Jacob Butler and their wives. The appellants claim that the note and mortgage in suit were obtained by fraud, and demand their surrender, and tender to the plaintiff the certificate of stock in controversy.

It is not necessary to specify in detail the inducements held out by Albright to secure the subscriptions made by the Butlers. It is sufficient to say that the real nature of the transaction was concealed from them; that they were led to believe that the stock for which they subscribed had never been issued, and that they were dealing only with the company; that by reason of an alleged surplus the stock was actually worth the amount they paid, and that the premium given was for the exclusive benefit of the company; that the business of the company would be extended into other states, including Illinois, Nebraska, Missouri and Kansas; that a branch office would be established at Clarinda, where a large share of the business of the company would be done; that large deposits would be kept in a Clarinda bank, and other advantages would accrue to the persons whose subscriptions were solicited and finally obtained. Some of the representations were in regard

to matters to happen in the future, and were mere expressions of opinion; but others were in regard to facts alleged to exist, and were in material respects false, and operated as a fraud upon the Butlers. The company had so far authorized the negotiations, and has since so far ratified them, that it is bound by them and by the means taken to secure them.

It may be conceded that the transaction was so far fraudulent that, had the necessary action been taken in due time, it would have been set aside. The branch office promised was established, and maintained for about one year, when its business was transferred to Cedar Rapids. An attempt was made to do business in other states, but it failed. John P. Burrows was one of the Clarinda subscribers, and in August, 1882, he was elected a director of the plaintiff. He did not own enough of its stock to hold that office, and he borrowed of the Butlers the shares which they owned to enable him to accept the office. Burrows held the stock so transferred until January, 1884. During the time he so held it he acquired such knowledge of the affairs of the company that he reached the conclusion that it was not in good condition, [and he sold his stock. He was elected director by means of the Butler influence to represent the Clarinda stockholders, and was relied upon to keep them advised as to the business and condition of the company; but it does not appear that he disclosed the information he had obtained until after he had sold his stock in the year 1884. The Butlers then commenced investigating the affairs of the company, William Butler acting for them. They learned as early as the fall of the year 1884 that the condition of the company had been misrepresented to them by Albright, although they did not, perhaps, ascertain all the facts until this cause was tried in the district court. But we are of the opinion that their knowledge in regard to the management and condition

of the company and the fraudulent character of the representations made to them at the time last stated was of such a character that they should be charged with knowledge of the fraud of which they now complain from that time. C. J. Deacon has been a stockholder and member of the board of directors of the plaintiff since the year 1881. He is also its attorney. William Butler corresponded with him after being told of the condition of the company by Burrows, and early in the year 1885 had an interview with him. From that time until the commencement of this action he appears to have been threatening suit against the company to obtain some relief, but he did nothing of a decisive nature. The correspondence between William Butler and Deacon was especially active during the year 1885, and was continued at least until the year 1887. In that correspondence Butler expressed much dissatisfaction with the management of the company, and threatened to apply for the appointment of a receiver. On the part of the company Deacon sought to discourage action by Butler, and represented from time to time that the affairs of the company were improving; that there was a prospect that dividends would be paid to stockholders, and that they would eventually learn that the dissatisfaction that they felt was not warranted; and that proceedings in court would do no good, but would result in harm. The Butlers evidently remained quiet in consequence of these statements, which were for the most part mere expressions of the opinion of Deacon. They permitted the settlement of the business of the company and the discharge of its obligations to proceed, with the knowledge that they appeared to be stockholders of the company, and that the note and mortgage in suit seemed to be their valid obligations, for the period of nearly four years. The conclusion is fully warranted by the evidence that they were waiting until in the settlement

of the affairs of the company it should appear whether it was for their interest to repudiate liability on their part as stockholders and refuse payment of the note in suit, or to acknowledge such liability and accept the dividends which would be paid to them as stock-holders. It is manifest that such a course cannot be upheld by a court of equity.

The capital stock of the plaintiff constitutes a fund for the payment of its obligations. If there be a surplus after they are discharged, it belongs to the stockholders. A subscriber for the stock of a corporation, who has been induced to become a member by fraud, owes it to all persons dealing with the corporation and trusting to its financial responsibility, to all persons who may thereafter become interested in the corporation, to all stockholders, and to the corporation itself, to act diligently to discover the fraud, and when it is discovered to act with promptness in terminating his obligation as a stockholder, if he elect to terminate it. 1 Morawetz on Private Corporations, secs. 108, 302, 308; *Upton v. Tribilcock*, 91 U. S. 45. In the conversation and correspondence with Deacon, William Butler expressed dissatisfaction with the manner in which he had been treated, and a desire to get rid of the stock in controversy, and to obtain the note and mortgage in suit. Attempts were made to find a purchaser for the stock, but they failed. In none of these negotiations does it appear that there was an unequivocal attempt on the part of Butler to rescind the contract of membership and stand upon his legal right to do so. Meanwhile there were transfers of stock and other acts by which innocent parties may have acquired rights which would be prejudiced by permitting the defendants to succeed in their defense. We conclude that the Butlers have wholly failed to use the diligence and act with the promptness required.

Other stockholders have been compelled to contribute more than sixty per cent. of the par value of their stock for the purpose of discharging corporate liabilities, and it is their right to insist that the Butlers contribute their just proportions.

It is objected that the defense of laches interposed to the claim of the appellants should have been pleaded in a reply, and that, as it was not, it ought not to be considered. We do not find that the objection was presented to the district court, and we do not think it should be sustained now.

2. PLEADING: practice in supreme court.

Judgment was rendered in favor of plaintiff for twenty-three hundred and ninety-eight dollars and thirty-five cents, besides attorney's fees and costs. The amount due on the note at the date of the judgment, which was January 4, 1890, was twenty-three hundred and eighty dollars and eight cents. But the plaintiff held three hundred and fifty dollars to the credit of the Butlers as an unpaid dividend on their stock, for which an accounting was asked by them. That should have been deducted, and judgment rendered for two thousand and thirty dollars and eight cents, and an attorney's fee and costs. The judgment of the district court will be modified to that extent, and in other respects approved. MODIFIED AND AFFIRMED.