JOHN JOHNSON et al., Appellants, v. ALF MORGAN, Appellee.

**APPEAL AND ERROR:** Trial De Novo—Law and Equity Intermingling—Trial to Court—Treatment on Appeal. A strictly law action, with trial, in the beginning, to a jury, followed by the dismissal of the jury by the court, without objection by either party, and trial to the court, without transfer to equity, because only law actions were involved, will be treated on appeal as a law action, even though equitable issues were pleaded but not determined.

**CORPORATIONS:** Subscriptions to Stock—Rescission—Fraud as Defense Against Creditors. Unpaid subscriptions for stock of a corporation may not, *as against the creditors of the corporation,* be defeated on the plea that the purchase was induced by the fraud of the officers of the corporation, when such plea was negligently withheld, and no effort was made to rescind therefor until long after the corporation had passed into insolvency.

> PRINCIPLE APPLIED: Defendant gave his note for shares of treasury stock of a South Dakota corporation. He lived near the place of business of the corporation, was in the factory when the stock was bought, was well acquainted with some of the principal officers of the corporation, and had full opportunity to examine its books, but did not do so. He talked with his neighbors who were stockholders, but made no inquiries as to whether dividends had been paid. His note was assigned by the corporation to one of its creditors as collateral to a loan. Six months after the purchase, the corporation assigned for the benefit of creditors. The said assignee, along with the creditors holding the said defendant's note as collateral, brought suit on said note. Defendant, over a year after the corporation's assignment, answered, *and, for the first time,* sought to rescind the stock purchase contract because of fraudulent representations of the corporate officers as to the dividends theretofore paid. *Held,* the attempted rescission came too late.

**CONTRACTS:** Construction—Statute Law of Place of Contracting— Subscriptions for Corporate Stock. A contract, made and per-

formable in a foreign state, to which contract the statute law of such state attaches a stated liability, will be construed in harmony with the requirements of such statute. So held in an action to enforce liability on a corporate stock subscription made in a foreign state.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

THURSDAY, NOVEMBER 23, 1916.

ACTION at law to recover the amount due and unpaid on the purchase price and the face value of defendant's capital stock in the Knowlton Manufacturing Company, a corporation. The indebtedness was evidenced by a note given for the purchase price of the stock, and the consideration for the note was the four shares of stock in the corporation. The action is brought by three creditors named as plaintiffs, for the benefit of themselves and all the creditors of the corporation. Bradshaw, as assignee of the company, joins as plaintiff with the others. A jury was impaneled to try the case, but the court was of opinion that only law questions were presented, and he discharged the jury. Neither party objected or excepted to such action by the court. The trial court dismissed the petition, and plaintiffs appeal.—*Reversed.*

*C. B. Kennedy* and *George T. Hatley,* for appellants.

*Hutchinson & Gantt,* for appellee.

PRESTON, J.—Counsel for the parties disagree as to the method of procedure in this court. Appellants contend that the cause is in equity and triable *de novo* in this court; while appellee contends that the case was an action at law, and should be presented here as such.

1. APPEAL AND ER- ROR: trial *de novo:* law and equity intermingling: trial to court: treatment on appeal.

We think appellee's contention must be sustained at this point. It appears that equitable defenses were set up, but these were not

determined. The action was commenced at law, and we do not find that any motion was made to transfer the cause to the equity docket, and we do not find that it was so transferred. As before stated, the trial was commenced before a jury, but the jury was discharged by the court, without objection by either party.

The petition was filed November 20, 1913, and alleges, substantially, that the Knowlton Manufacturing Company was, on June 26, 1912, a corporation organized under the laws of the state of South Dakota; that on said date it executed to plaintiffs, other than the assignee, its promissory note, wherein it promised to pay said plaintiffs $2,500 in six months from that date; that, on July 2, 1912, defendant executed to said corporation, whose place of business was Canton, South Dakota, his promissory note, by which he promised to pay said company $200. The note is as follows:

2. CORPORATIONS: subscriptions to stock: rescission: fraud as defense against creditors.

"$200.00          Canton, South Dakota, July 2, 1912.

"On the first day of July, 1913, for value received, I promise to pay Knowlton Mfg. Co., or order, $200 at the Farmers State Bank of Canton, Canton, South Dakota, with interest at the rate of 8 per cent per annum from date, interest payable annually, principal and interest to draw 12 per cent per annum after due.

"Post Office Canton, S. D.

"Alf Morgan."

That said corporation, to secure the payment of said $2,500 note, pledged, with plaintiffs, certain notes, among them the note of defendant, before referred to; that defendant's note was so pledged before maturity; that the corporation, on January 27, 1913, being insolvent, made an assignment for the benefit of its creditors of all its property and credits to plaintiff Bradshaw, who qualified as such assignee and is in possession of all its property; that neither the

$2,500 note nor the $200 note has been paid. Plaintiff asks judgment for the amount of the $200 note, with interest.

By an amendment to the petition, plaintiff alleged that the consideration for defendant's $200 note was four shares of stock in the Knowlton Manufacturing Company, which stock was original stock, subscribed for from the corporation itself; that the law of the state of South Dakota with reference to the liability of stockholders in a corporation is as follows:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not fully paid the capital stock held by him, and in such action the court must ascertain the amount that is unpaid upon the stock held by each stockholder and for which he is liable, and several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation. The term 'stockholder,' as used in this section, shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appear upon the books in the name of another; and also to every person who has advanced the installments or purchase money of stock in the name of a minor, so long as the latter remains a minor; and also to every guardian or other trustee who voluntarily invests any trust funds in the stock. Trust funds in the hands of a guardian or trustee shall not be liable under the provisions of this section by reason of any such investment, nor shall the person for whose benefit the investment is made be responsible in respect to the

stock until he becomes competent and able to control the same; but the responsibility of the guardian or trustee making the investment shall continue until that period. Stock held as collateral security, or by a trustee, or in any other representative capacity, does not make the holder thereof a stockholder within the meaning of this section, except in the cases above mentioned, so as to charge him with the debts or liabilities of the corporation; but the pledgor or person, or estate represented, is to be deemed the stockholder as respects such liability.''

Defendant for answer admits the incorporation of the company; admits the execution of the $200 note and the assignment of the corporation; denies the execution of the $2,500 note; denies that the note was pledged to plaintiffs; admits that the $200 note has not been paid. The execution of the $2,500 note, and that the $200 note, with others, was pledged, as alleged by plaintiff, was established by the testimony. For further answer, defendant alleges that J. F. Knowlton was president of the corporation, and that the plaintiff Johnson was the treasurer thereof from May 24, 1912, to the assignment, and that one A. E. Stowell was employed by the corporation and its officers for the purpose of selling stock in the company; that, prior to the purchase of the stock by plaintiff for which the note in suit was given, said Knowlton represented that said stock was a good investment, and that it had paid a dividend of 37 per cent up to that time; that if it had more money it would pay better than 100 per cent in a year; that the investment would pay defendant better than real estate; that the company had a patent covering the Knowlton engine, to manufacture which the company was organized. Defendant further alleges that such statements were untrue; that plaintiff Johnson also represented to defendant that it was a good investment, as did Stowell; that defendant relied upon such representations, and purchased the four shares of stock and gave his note therefor; in the answer defendant tendered back to the cor-

poration and to the assignee the certificate of stock and asked
a rescission because of the alleged fraud; and further alleged
that, at the time he purchased said shares of stock and gave
his note, the corporation was insolvent, and the shares were
worthless and of no value; and that, therefore, there was no
consideration for the note.   Substantially the same matters
were set out by defendant as a counterclaim, and asking a
rescission of the contract and that his note be returned.   The
allegations of the answer were denied by plaintiff's reply,
except it admitted that Stowell solicited defendant to buy
stock; admitted that the note was given for four shares of
stock; admitted the assignment of the corporation.   The stat-
utes of South Dakota were proved.   At the time the note
was given, defendant was a resident of South Dakota, and
the place of business of the corporation was in South Dakota.

Appellee's contentions, upon which he cites authorities,
are that the plaintiff Bradshaw, as assignee of the manufac-
turing company, has no interest in the note in suit, because
the other plaintiffs are pledgees of the note, and are the
only plaintiffs shown to have the right to collect on said
note; that the amendment to the petition setting out the
South Dakota statute did not give the assignee any additional
interest in the note; that the manufacturing company, hav-
ing pledged the note to plaintiffs, could claim no interest as
against them, and the assignee could derive from the company
no greater interest than it had; that the corporation had the
right to prefer a part of its creditors as against others.   They
contend, also, that the evidence sustains the defense set up,
that defendant's subscription was procured by fraudulent
representations, and the defense of want of consideration, for
that the liabilities of the corporation exceeded $25,000 at the
time defendant purchased the stock, while its assets were
less than $15,000, and that, therefore, the company was insol-
vent.   They contend further that, having shown fraud and
want of consideration in the inception of the note, the burden
is on plaintiffs to show they were bona fide purchasers; that

plaintiffs, as pledgees, without indorsement of the note, are
subject to any defenses existing against the payer; and,
finally, that the trust fund doctrine contended for by plain-
tiffs applies only to bona fide creditors, and not to creditors
charged with notice of fraud or want of consideration, as
they claim plaintiffs in this suit are chargeable.   On this last
proposition, appellee cites *State Trust Co. v. Turner,* 111
Iowa 664; *Taylor v. Bank,* 9 S. Dak. 572 (70 N. W. 834).
These last cases do not involve the question upon which we
think this case must be determined; and that is as to whether
or not the defendant will now be permitted to rescind, he
having failed to take any steps towards a rescission of the
purchase of the stock and the note, for a considerable time
after the purchase was made and the note given, and until
after the corporation had made an assignment for the benefit
of all its creditors.

The appellant contends, as his first proposition, that,
under the circumstances shown in this case, it is too late for
the defendant to rescind his subscription to the capital stock,
the consideration of the note, on the ground that he was
induced to subscribe on account of fraudulent representa-
tions of the corporation's agents, after the corporation had
made a general assignment for the benefit of all creditors
before the suit was brought, and that defendant has neither
pleaded nor offered evidence that he used any diligence to
discover the fraud he alleges was practiced upon him, either
before or after the corporation made the assignment.   Other
propositions of appellant are that, even if it be competent
under any circumstances, under the facts in this case, for
a stockholder to interpose the defense of fraud in inducing
the subscription, and to seek a rescission of the contract,
still the evidence in this case does not show such diligence
by defendant as is required by law to discover the fraud
and to rescind the contract; and, third, that the representa-
tions pleaded by defendant and testified to by him do not
constitute such fraud as would warrant him in rescinding

the contract. We are of opinion that appellants' first propo-, sition is sound. This renders it unnecessary to determine the other points.

1. Many authorities are cited by appellant to sustain his first proposition. Appellee contends that these cases are not in point, for the reason that the doctrine contended for by appellants applies only for the benefit of bona fide creditors, and that it does not apply where, as they contend is the fact in this case, the contract was procured through false representations, and that the cases cited by appellants so show.

We think the cases are otherwise. There is no dispute in the evidence that defendant made no attempt to rescind for a considerable time after the transaction, and not until after the suit was brought. As stated, defendant subscribed for the four shares of stock of the corporation on July 2, 1912, and the shares of stock were issued and delivered to him at about the same time, and he then gave his note for $200 in payment therefor. In January following, the company made an assignment for the benefit of all its creditors. The note of defendant was pledged, with other notes, as collateral security with plaintiffs, other than the assignee, to secure the payment of the $2,500 loan which said plaintiffs made to the company. The defendant did not, either before or after the insolvency of the company, attempt to rescind the contract for the purchase of his stock, or tender back to the company the certificates, until the filing of his answer in this suit, which was February 10, 1914, more than a year after the insolvency of the company and its assignment. And he did not then make an actual tender of the certificate, but in his answer in a law action he did tender it

3. CONTRACTS: construction: statute law of place of contracting: subscriptions for corporate stock. back. Because the contract was made in South Dakota, and the note by its terms was payable there, the liability of defendant should be determined by the laws of the state of South Dakota. It would seem that, under the South Dakota

statute, before set out, the liability of the stockholder is statutory and absolute. This liability, created by statute, is a part of the contract of each creditor. The Supreme Court of South Dakota has passed upon this question in the recent case of *Keyes v. Blue Bell Medicine Co.*, 148 N. W. 505. In that case, plaintiff claimed that the contract whereby he purchased stock from the corporation was induced by fraud, and, after the insolvency of the corporation, attempted to rescind the contract. The court said:

"Appellant first contends that the trial court erred in failing and refusing to make a finding upon the question of fraud. Inasmuch as the trial court found that the attempted rescission came too late, and inasmuch as we sustain such finding, it becomes unnecessary to consider that question. At the time of the transfer, the company was solvent. At the time of the attempted rescission, it was insolvent, and had been in the hands of the receiver about 5½ months. Unpaid claims in excess of $58,000 had been filed with the receiver, and there were not enough assets to pay the claims. Plaintiff had been the owner of the shares of stock more than 2 years, and had never received a dividend thereon. Plaintiff must be charged with laches in asserting his claimed right of rescission. Through delay and owing to the insolvency of the corporation, he has lost such asserted rights. Morawetz on Corporations, Sec. 839; Cook on Corporations, Secs. 161, 164; Jones on Insolvent and Failing Corporations, Sec. 399; *Fear v. Bartlett*, 81 Md. 435 (33 L. R. A. 721); *South Bend Toy Mfg. Co. v. Pierre F. & M. Ins. Co.*, 4 S. D. 173."

In that case there was the additional fact that plaintiff claims under a special contract of guaranty. The facts in the cited case and the instant case are quite similar. In the cited case, plaintiff had been a stockholder 2 years, and in the instant case, almost 2 years; in that case, the attempted rescission was 5½ months after the insolvency, and in the instant case, more than 12 months after the insolvency and assignment; and in both cases the stockholder had received

no dividend. The South Dakota court approves the rule laid down by Morawetz at Sec. 839, wherein the author says:

"It should be borne in mind that the shareholders of a corporation are the real parties in interest for whom the corporate obligations are incurred. Creditors of a corporation have equitable rights against the shareholders directly, and these rights do not depend upon the agreements existing among the shareholders themselves, or their dealings with the common agents. It has accordingly been settled that, if a corporation is insolvent, a shareholder whose contract of subscription was obtained by the fraud of the company's agents cannot diminish the security of bona fide creditors, by rescinding his contract to contribute the amount of capital subscribed by him."

This court has adopted the same rule, and cites in support of its decision the case of *Fear v. Bartlett,* supra, cited by the Supreme Court of South Dakota.

In *Hinkley v. Sac Oil & Pipe Line Co.,* 132 Iowa 396, at 410, we said:

"It appears, however, that the company was insolvent at that time, and it is suggested that for this reason the stock ought not to be canceled. The accepted doctrine in England is that a subscription for stock cannot be rescinded where suit is instituted subsequent to the insolvency of the company and when its affairs are being wound up. *Stone v. City & County Bank* [1877], 3 C. P. 282; *Oakes v. Turquand,* L. R. 2 H. L. 325; *Henderson v. Royal British Bank,* 7 El. & Bl. 356, 363. It is said that no person who, at the commencement of the winding up, is *de facto* a member—that is, who has, by a contract not previously avoided, become a member —can withdraw from the distribution for the benefit of creditors any part of the company's assets, either by recalling money paid by him to the company or by taking himself out of the category of those liable to pay further calls. In consequence of the distribution of assets amongst creditors, a member cannot insist upon the equity which he might other-

wise have claimed to be relieved from his contract with the company. 2 Thompson on Corp., Sec. 1441. . . . The true rule, as it seems to us, is stated in *Fear v. Bartlett*, 81 Md. 435 (32 Atl. 322; 33 L. R. A. 721); and that is, the right to rescind may be exercised, assuming diligence, unless proceedings of insolvency, voluntary or involuntary, have been instituted or some act has been committed which is regarded as an act of insolvency.''

See, also, *Cedar Rapids Ins. Co. v. Butler*, 83 Iowa 124; *Miller v. Hawkeye Gold Dredging Co.*, 156 Iowa 557; *Chubb v. Upton*, 95 U. S. 665, where it was held that it was too late, after an assignment, to set up the defense of false representations, especially where the subscriber had not been vigilant in discovering such fraud and in repudiating the contract.

In the instant case, if the collateral put up to secure the $2,500 note is more than enough to pay that obligation, the balance would go to the assignee, for the benefit of other creditors. The assignee is joined as party plaintiff in this action.

Appellants claim that defendant was a stockholder for more than six months before the corporation became insolvent; he was such stockholder more than a year after the insolvency; he lived near the factory; he knew the management, and made no objection or accusation of fraud until the suit was brought by the assignee for the benefit of the creditors, and the creditors to whom the stock was pledged. He did not attempt to rescind when the factory first closed its doors, although he testifies he lived near it.

The following cases may be cited as sustaining our conclusion, although we shall not attempt to cite all those referred to by appellants. The weight of authority seems to sustain this proposition: *Gress v. Knight*, (Ga.) 68 S. E. 834 (31 L. R. A. [N. S.] 900); *Duffield v. Barnum*, (Mich.) 31 N. W. 310; *Western Nat. Bank v. Lawrence*, (Mich.) 76 N. W. 105; *Harpold v. Stobart*, (Ohio) 21 N. E. 637; *Dunn v. State*

*Bank*, (Minn.) 61 N. W. 27; *Gianella v. Bigelow*, (Wis.) 71 N. W. 111; 3 R. C. L. 385; 10 Cyc. 440.

We shall not refer at any length to other points, but refer to some of the testimony as bearing upon the question as to whether defendant used proper diligence in discovering the fraud and in rescinding the contract. It appears that defendant lived near the town of Canton, where the factory was located; he was in the factory at the time of the subscription, or the day after; he knew the president of the company and some of the members. He could have inspected the records of the company whether the representation as to payment of dividends was true or not. It further appears that he talked to some of his neighbors who were stockholders of the corporation, but made no inquiry of them or of the officers as to whether a dividend had been paid, or as to the financial condition of the concern. Even after the insolvency of the corporation, defendant made no effort to rescind his contract. As stated, the corporation went into the hands of the assignee January 27, 1913, and no attempt was made to rescind the contract of subscription until the answer was filed, February, 1914.

Under the record as now presented, our conclusion is that defendant's attempted rescission came too late, and that the trial court erred in dismissing the plaintiff's petition. The cause is therefore—*Reversed* and *Remanded*.

Evans, C. J., Deemer and Weaver, JJ., concur.