LILLIAN E. ELLIS, Appellee, v. ANNIS & ROHLING et al.,
Appellants.

**WATERS AND WATERCOURSES:** Decrees Adjusting Rights—
1   Priorities in Irrigation Rights. An adjudication of relative priorities as to the use of water for irrigation purposes is presumed to continue until a court of competent jurisdiction in an appropriate decision has otherwise determined.

**WATERS AND WATERCOURSES:** Irrigation—Adjudicated Rights.
2   Evidence reviewed, in an action as to the right to use water for irrigation purposes, and held insufficient to sustain the claim of an abandonment as overcoming the presumption that the adjudicated right continued to exist, or to show that there had been such an abandonment.

**VENDOR AND PURCHASER:** Rescission—False Representations.
3   Evidence reviewed, in an action for rescission of the sale of lands, and held insufficient to establish the falsity of alleged representations as to availability of water supply for irrigation purposes on said land.

**EVIDENCE:** Opinion Evidence—Representations Made as of Knowl-
4   edge. Evidence reviewed, in an action for rescission of the sale of land on the ground of false representations, and *held* that representations claimed to have been made as to adequate water supply for irrigation purposes were made upon the assumption that the seller of the land knew them to be true, and were more than an expression of opinion.

**ELECTION OF REMEDIES:** Inconsistent Proceedings. Where
5   plaintiff commenced an action for damages for sale of land with full knowledge that at least 104 acres of the land which he had purchased could not be irrigated, and with full knowledge of the alleged fraud, there was a conclusive election on her part to affirm the contract and claim damages, and she was

thereby estopped from changing the form of her action to a suit in equity for rescission on the ground of fraud in the sale thereof, based on the same facts.

**VENDOR AND PURCHASER:** Rescission—Delay in Bringing Suit.
6   A party desiring rescission of sale of lands for fraud must commence suit therefor within a reasonable time after discovering the falsity of the representations relied upon. Evidence reviewed, and held to show that plaintiff was guilty of laches.

**VENDOR AND PURCHASER:** Damages—Election of Remedies. A
7   plaintiff in an action for rescission of the sale of land on the ground of fraud, upon failure to obtain such rescission cannot recover damages for the difference between the price paid for the land and what it would have been worth if susceptible of irrigation, if it had been as represented, where her petition did not contain a prayer for alternative relief, and where the two causes of action were necessarily inconsistent, as an action at law for damages on account of fraudulent representations in inducing the execution of a contract cannot be joined with a suit to rescind upon the same ground.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

JULY 10, 1919.

REHEARING DENIED OCTOBER 22, 1919.

SUIT in equity for rescission, and to recover the purchase price paid for a tract of land in Colorado. The facts are fully stated in the opinion. There was a decree in favor of plaintiff, as prayed, and defendant appeals.—*Reversed.*

*Tinley, Mitchell, Pryor & Ross,* and *Paul M. Clark,* for appellants.

*Fremont Benjamin, Verne Benjamin, I. B. Melville,* and *Max D. Melville,* for appellee.

STEVENS, J.—The issues may be more easily stated and understood if preceded by a brief statement of a few of the more important facts. A corporation known as the Antero

& Lost Park Reservoir Company was organized under the laws of Colorado in 1907 for the purpose of taking over the Antero and Lost Park reservoirs, used for storing water for irrigation purposes, the former being then in process of construction, from the High-Line Reservoir Company, a corporation owning the same. Later, the Antero & Lost Park Reservoir Company purchased the High-Line Canal from the Platte Land Company, together with approximately 11,000 acres of land, located near Denver, The Antero Land & Irrigation Company was incorporated in 1909, for the purpose of organizing an irrigation district, and to purchase the Antero Reservoir and High-Line Canal. The irrigation district which the Antero Land & Irrigation Company contemplated organizing included approximately 60,000 acres of land, located a short distance southeast of the city of Denver. The land in controversy was a part of this tract.

In June, 1909, plaintiff and her husband, and a real estate man and his wife by the name of Martin, all of whom resided in Omaha, Nebraska, went to Denver, and, in pursuance of previous arrangements made with one Kynnett, an employee of defendant Annis & Rohling, all of whom resided at Council Bluffs, Iowa, met the defendant Annis at the Albany Hotel in Denver. Before going to Denver, plaintiff deposited $400 with Kynnett as an advance payment upon a tract of land located within the boundaries of the proposed irrigation district. Upon arrival at Denver, plaintiff learned that the tract she had intended buying had already been sold. The above-named parties, with defendant Annis, went from Denver in an automobile to look at the west one half of Section 21 and the southeast quarter of Section 29, Township 2, Range 65, Adams County, Colorado, which plaintiff subsequently purchased, and which forms the subject-matter of this controversy. The consideration paid for this land was

$14,400, which was paid, part cash, part upon deferred payments secured by mortgage upon the land, and part by the assumption of an existing mortgage upon the land. The full consideration was paid before the commencement of this suit.

On July 16, 1914, plaintiff commenced an action at law against the defendants for damages, alleging in her petition, in substance, that defendant Annis falsely represented that all of the above-described tract would be irrigated by the extension of the High-Line Canal, owned by the Antero Land & Irrigation Company, of which he was a stockholder and officer. In this action she demanded judgment for $3,000, with interest thereon at 6 per cent from July 17, 1909. On November 12th following, plaintiff filed an amended and substituted petition in equity, tendering a reconveyance of the lands to defendant, asking a cancellation and rescission of the contract, and demanding judgment for the consideration paid, with interest.

The grounds stated in her amended and substituted petition, upon which she bases a right of rescission, were, in substance, that the defendant Annis represented to her that the defendant partnership owned certain agricultural lands in a proposed irrigation district comprising 60,000 acres, located near the city of Denver; that the Antero Reservoir, which would have an available annual storage water supply for irrigation purposes of about 85,000 acre feet, was in course of completion; that the High-Line Canal, with an available flow of approximately 1,200 second feet of water, had long since been constructed, and would be extended so as to furnish water for the tract purchased; that all of the water of said reservoir and more than one half of the supply of said canal would be annually available for irrigating the land in said proposed district; that the supply of water would be more than ample

to insure the raising of all kinds of agricultural crops; that the land would be worth from $100 to $150 per acre when the system was completed; that all of the lands within the district were then selling at from $30 to $40 per acre; that same was remarkably cheap at that price; that the irrigation system would be bought and paid for by the bonds of the district at from $45 to $50 per acre, which would run for a period of twenty years, the interest only to be paid for the first ten years; that each acre of said land owned by defendants would be under said irrigation system, and would be furnished its pro rata share of the water supply, and sufficient to thoroughly irrigate the same. She further states that, later, an irrigation district was organized, with approximately 60,000 acres of land, and bonds were issued thereby, as stated: but it is alleged that the Antero Reservoir did not have an available water supply for storage of 85,000 acre feet, and the said High-Line Canal did not have an available annual water supply of more than 600 second feet, which was not available for use upon the land within the new district; that all of the remaining statements and representations of the said Annis were false, and known by him to be false and untrue; or, if not so known, were made under a mistake of fact, and were intended to, and did, induce the plaintiff to purchase said land for $14,400, and to pay considerable sums in taxes thereon. Plaintiff further alleges that she did not discover that the statements and representations made to her, which induced the purchase of said land, were false and untrue, until October, 1914, and after the commencement of her action at law for damages; and that she, immediately upon discovering same, caused a written notice of her election to rescind to be served upon the defendants.

Defendants, for answer, admitted the copartnership and many other allegations of plaintiff's petition not neces-

sary at this time to state, and denied that the defendants, or either of them, represented that the supply of water to the land in question would be more than ample to insure the production of crops, or that the land in the district was selling for from $30 to $35 per acre. They denied all allegations of fraud and false representations, and averred that plaintiff visited and inspected the land before purchasing the same, and was advised of the plans and purposes of the East Denver Municipal District, by which name the proposed district was to be known; was fully informed as to the plans and methods contemplated for the irrigation of the land, and that it would be necessary to bond the district for $3,000,000, to carry out the irrigation system; that, after the sale of the land to plaintiff, proceedings were completed therefor, and the East Denver Municipal Irrigation District organized. The answer in detail recites the steps taken to carry out the purpose of the irrigation scheme, and further denies that plaintiff did not learn until October, 1914, that a portion of the tract purchased by her could not, on account of its elevation, be irrigated by the system proposed, and avers that she had full means and opportunity of ascertaining the facts, and that same were known to her at the time of the commencement of her suit for damages; that her cause of action is barred by the statute of limitations; and that she has been guilty of laches in the prosecution of this suit. By way of reply, plaintiff pleads, among other matters, certain statutes and decisions of the Supreme Court of Colorado, which will be referred to hereafter.

Many of the following matters are admitted of record, or were established without substantial dispute, to wit: That an election was held on the second day of September, 1909, by the resident electors of the proposed irrigation district, to vote upon the question of forming an irrigation district, and that the proposition was defeated;

that another election, to vote upon a like proposition, was
held in October, at which a majority of the votes were cast
in the affirmative, and the East Denver Municipal Irriga-
tion District was thereupon established; that, at the last
election, it was voted to issue $3,000,000 in bonds, for the
purpose of purchasing the Antero Reservoir and High-Line
Canal of the Land & Irrigation Company, and a contract
for that purpose, dated May 1, 1909, was ratified at said
election; that all of the proceedings for the organization
of the irrigation district were regular, and in accordance
with law; that, in an appropriate proceeding in the dis-
trict court, the legality and validity of the organization of
the irrigation district and the bonds issued thereby were
fully approved; that, on August 30, 1910, a contract was
entered into by the East Denver Municipal Irrigation Dis-
trict and the Antero Land & Irrigation Company, by the
terms of which, for a consideration of $3,000,000 of 6 per
cent bonds of the irrigation district, the former agreed to
convey to the latter the Antero Reservoir, the High-Line
Canal, extended as contemplated, together with certain
laterals, and three distributing reservoirs, to be construct-
ed within the district, and certain other franchises, water
rights, etc.; that the Antero reservoir had a capacity of
85,600 acre feet of water; that the predecessors of the An-
tero Land & Irrigation Company had adjudicated water
rights and priorities of 1,184 second feet of water, and that
approximately 600 feet of the water adjudicated in favor
of the High-Line Canal had previously been sold, and was
not available for use in irrigating the lands within the new
district; that the lands purchased were suitable for the
production of crops, if properly irrigated; that 104 acres
of plaintiff's tract were not susceptible of irrigation from
the High-Line Canal, because of its elevation; that no ex-
tension of the High-Line Canal was constructed, nor was
it fully cleared out, repaired, and put in shape for

carrying the amount of water necessary for the use of the district, as provided by its contract with the Land & Irrigation Company.

Going now to a statement of the evidence of the respective parties concerning the purchase of the land in controversy, we find them in substantial harmony as to much that was said and done by them. So far as the record shows, all of the negotiations were conducted on behalf of the defendants by A. D. Annis, and on behalf of the plaintiff by her husband, who is a physician, located in the city of Omaha. It is admitted by plaintiff that Annis showed to the parties heretofore named the land purchased, and pointed out with his hand where the High-Line Canal was to be constructed; that the land was somewhat rolling; that there was nothing on the ground to indicate the exact location or course of the canal; that no laterals or ditches had been constructed; that they later several times crossed the High-Line Canal on their return to Denver, and upon a trip to Colorado Springs, and that Annis called attention thereto; that he offered to take plaintiff and party to see the Antero Reservoir, then in process of construction; that she knew it was proposed to organize an irrigation district and issue bonds which would be a lien on the land to the extent of $50 per acre: but she claims that Annis represented to her that the water supply would be at all times abundant and sufficient for the production of crops; that all of the land would be irrigated; and that these statements were made as of his personal knowledge. Annis, however, claims that, after pointing out with his hand where he understood the extension of the High-Line Canal would be located, he informed plaintiff that the 480-acre tract was all within the boundaries of the proposed district; that the Antero Reservoir was in process of completion, and would have a storage capacity as above stated; that there was an adjudicated priority in favor of the canal of approximately

1,200 second feet of water: but he denies that he stated to plaintiff that each acre of the land would be irrigated, and that an abundant supply of water would be provided annually for the district, and says that whatever statements were made by him upon that question were based upon information obtained from engineers and other persons, and were believed by him to be true, and that he stated his source of information to the plaintiff.

The principal conflict in the evidence, it will thus be seen, relates to the alleged representations as to the sufficiency of the water supply, and the susceptibility to irrigation of each acre of the tract purchased.

The Antero reservoir was later completed, with a capacity of 85,600 acre feet; and it is conceded that a decree of the district court was entered in 1879, fixing the priorities of the High-Line Canal as 1,184 second feet of water.

It is the claim of appellant: (a) That all the alleged statements and representations of the defendant were matters of opinion only; (b) that plaintiff's cause of action is barred by the statute of limitations; (c) that she failed to prosecute her claim with diligence, and did not bring her suit to rescind within a reasonable time after discovering the alleged fraud; (d) that she is estopped to claim rescission of the contract because of her election to affirm the same by the commencement of an action for damages.

I. In view of the conclusion reached by the court in this case, it is important at the outset to decide: (a) What, if any, of the representations claimed to have been made by the defendant Annis to plaintiff and her representative, upon which she relied in purchasing the land, were false? (b) Did Annis know, at the time the representations were made, that any or all of them were false? (c) If the falsity thereof was not known to him, were they

made carelessly, and upon assumed knowledge of their truth?

It is admitted of record that 104 acres of the tract purchased, on account of its elevation, could not be irrigated by the proposed system, and it appears without conflict in the evidence that the plaintiff knew this fact as early as November, 1913, several months before the action at law for damages was commenced. The only other representation relied upon by plaintiff, as we understand counsel for appellee, is that there would, at all times, be an abundance of water distributed upon the land for the production of all kinds of agricultural crops.

On behalf of appellant, it is strenuously insisted that all of the alleged representations as to the water supply were mere expressions of opinion, and that same must have been so received and understood by plaintiff. Plaintiff must have understood that the purpose of constructing reservoirs was to provide storage for water, and that the water supply necessarily depended upon the accumulation of snow in the mountains, the quantity of which is notoriously variable.

Defendant, according to the undisputed evidence, explained to plaintiff that the water would be conveyed to the land in the East Denver Suburban Irrigation District through an extension of the High-Line Canal, and that the extension had yet to be constructed; that the Antero reservoir was in the neighborhood of 150 miles distant; and that approximately one half of the adjudicated priority of 1,184 feet would be used to irrigate lands for which prior rights existed.

There is some dispute in the evidence as to whether the capacity of the High-Line Canal will enable it to carry sufficient water to irrigate the lands in question, but the proposed system contemplated the enlargement and repair of the canal, and the construction of three distributing res-

ervoirs within the district, as follows: The Abbott, with a storage capacity of 9,000 acre feet; the High-Line Terminal reservoir, with a storage capacity of 4,000 acre feet; and the Irondale Reservoir No. 1, with a storage capacity of 800 acre feet. The latter was completed prior to August 30, 1910. There is also a dispute in the evidence as to the quantity of water probably available for storage in the Antero reservoir. Witnesses for defendant testified that it could have been filled to full capacity during several years since 1909, whereas some of the witnesses for plaintiff testified that it could not at any time have been filled, and that the available supply for storage therein would not exceed 20,000 acre feet.

It is also claimed by counsel for appellee, and evidence was offered to sustain this contention, that the predecessor of the Land & Irrigation Company, to the rights of which it succeeded, lost its right to approximately one half of its adjudicated priority of 1,184 second feet by nonuse, and that, therefore, practically none of the water supply to which the Land & Irrigation Company is entitled will be available for irrigating the lands in question. The evidence upon many of these questions is in direct conflict. An engineer of considerable experience in irrigation matters, and apparently well informed as to conditions affecting the water supply available for storage in the Antero reservoir and that may be diverted through the High-Line Canal, expressed the opinion that sufficient water could not be obtained for the irrigation of the land in the new district. The testimony of this witness was based in part upon records, the correctness of which is challenged by defendant. Witnesses of apparently equal capacity and information called by the defendant expressed a contrary opinion.

As before suggested, much reliance is placed by counsel for plaintiff upon her claim that the right to use ap-

proximately one half of the 1,184 second feet has been lost by abandonment and nonuse. The decree

1. WATERS AND WATERCOURSES: decrees adjusting rights: priorities in irrigation rights.

of the Colorado court, in which the adjudication was had, was entered in 1879, and has not since been modified. It is conceded by counsel for appellant that adjudicated priorities may be lost by abandonment, but it insisted that no competent evidence thereof was offered upon the trial of this case. An adjudication of relative priorities is presumed to continue until a court of competent jurisdiction, in an appropriate proceeding, has otherwise determined. The Supreme Court of Colorado, in *Lower Latham Ditch Co. v. Bijou Irr. Co.*, 41 Colo. 212 (93 Pac. 483), said:

"This proceeding by appellee, as petitioner below, was under 'an act in relation to irrigation' (Session Laws 1899, p. 235), and the object was to obtain a decree permitting a change of the point of diversion of the right to the use of water for irrigation originally decreed to the Frederick Bros.' Ditch, which is situate in water district No. 2, and now owned by petitioner, to the head gate of the Bijou ditch, also owned by petitioner, and situate in water district No. 1. The cause was referred to a referee to take evidence and make findings of fact and report a decree. The court, with some modifications and corrections, approved of the referee's findings, and entered a decree in favor of the petitioner as prayed for. Some of the respondents appealed, and rely for reversal upon four grounds: (1) That the priority in question had been totally abandoned prior to its acquisition by the petitioner; (2) that a partial abandonment thereof occurred; (3) that the change, if allowed, would injuriously affect the vested rights of the respondents; (4) that the district court was without jurisdiction of the subject-matter of the petition. The first two contentions are at rest in this jurisdiction.

Trial and decision of the pending cause was had, and briefs were filed here before publication of the opinion of this court in *Wadsworth Ditch Co. v. Brown*, 39 Colo. 57. We decided there that the statute under which such proceedings are conducted does not contemplate the determination of the question of abandonment. The statute provides for changes of the point of diversion where an adjudication of relative priorities has been had under the statutes enacted for that purpose. The presumption is that such rights continue in existence until a court of competent jurisdiction in an appropriate proceeding has otherwise determined, and no such determination has been had of this priority. We adhere to and approve of the former decision."

See, also, *Wadsworth Ditch Co. v. Brown*, 39 Colo. 57 (88 Pac. 1060); *Rogers v. Nevada Canal Co.*, 60 Colo. 59 (151 Pac. 923); *Arnold v. Roup*, 61 Colo. 316 (157 Pac. 206).

The evidence offered to sustain the claim of abandonment is not sufficient to overcome the presumption that the adjudicated right continued to exist, or to satisfy us that there has been such abandonment. While the evidence leaves the question of the available water supply open to more or less doubt, it falls short of proving that, had the system been completed as contemplated, the land would not have been properly irrigated. The burden rested upon plaintiff to establish the allegations of her petition by clear and satisfactory proof; and this, so far as the same relates to the water supply, she has not done. In what is said above, we have not given weight to appellant's contention that the alleged representations as to the water supply were expressions of opinion only. In saying this, we do not express an opinion as to the merit of counsel's contention.

2. WATERS AND WATERCOURSES: irrigation: adjudicated rights.

3. VENDOR AND PURCHASER: rescission: false representations.

Having arrived at the conclusion that the evidence be-
fore us does not satisfactorily establish the falsity of the
alleged representations as to the available water supply, it
is unnecessary to further discuss this ques-

4. EVIDENCE:
opinion evi-
dence: represen-
tations made as
of knowledge.

tion; but the following matters bear upon
the question, and we content ourselves with
the mere statement thereof. Annis first be-
came interested in the proposed scheme to
organize an irrigation district and to extend the canal for
the purpose of supplying water thereto in 1908 or 1909.
The evidence, without conflict, discloses that, before the
transaction in question, he consulted engineers, attorneys,
and other persons who were familiar with irrigation proj-
ects in Colorado, and having knowledge of the properties
referred to, among whom was a former state engineer
of the state of Colorado, a former clerk of the Supreme
Court of that state,—a man with extensive experience,—
an engineer residing at Greeley, Colorado, and several firms
of attorneys connected with various irrigation projects and
generally familiar with the High-line Canal, the Antero
and Lost Park reservoirs, and the water supply in that
region. All of the above-mentioned parties informed Annis
that the proposed scheme was practicable, and were of the
opinion that same could be successfully carried out.

The evidence further discloses, without conflict, that,
while on the land, defendant attempted to point out the
proposed location of the extension of the High-Line Canal;
that, in 1911, defendant and Dr. Ellis were again upon the
land, at which time a furrow marking the location of the
canal had been run. At the time of the first visit, no survey
had been made, and there was nothing to indicate the ex-
act place where the canal would be located. The land was
rolling, and it is quite manifest, from the description, that
no one could determine positively, without an appropriate
survey, whether all of the land would be irrigated or not.

The furrow above referred to was below the crest of the ridge upon which the same was located, and might well have suggested to Ellis some doubt as to the susceptibility of all of the tract to irrigation. Martin testified positively that defendant represented that each acre of the land would be abundantly supplied with water. Plaintiff does not testify directly upon this point, and Dr. Ellis weakens the force of his testimony, to some extent, by stating that defendant claimed that he obtained his information upon this point from the engineers. The defendant denied that he represented that each acre of the land would be irrigated, and asserts that he stated that all of the tract would be within the boundaries of the irrigation district. We are convinced from the evidence that the defendant did not, at the time, know that any part of the land was so high that it would not be irrigated; but we are not inclined to adopt the claim of counsel for appellant that the representation claimed to have been made was an expression of opinion only. While it was in the nature of an opinion, it was apparently made upon the assumption that defendant knew it to be true. Whether plaintiff was justified, in view of all that was known to her, in relying thereon may well be doubted; but assuming, without deciding, that the representation was made as alleged, as of the assumed knowledge of the defendant, and that same was believed and relied upon by the plaintiff, and induced her to purchase the land, has plaintiff shown herself entitled to rescission?

II.   At the time the suit for damages was commenced, plaintiff knew that at least 104 acres of the land could not be irrigated. In her petition, she asked damages in the sum of $3,000 on account thereof. Counsel **5. ELECTION OF REMEDIES: inconsistent proceedings.** for appellant contends that plaintiff, by commencing a suit for damages, elected to affirm the contract, and cannot now main-

tain a suit in equity for rescission. The answer of counsel for appellee to this contention is that plaintiff commenced her suit for rescission immediately after obtaining knowledge that the available supply of water for irrigating the land was inadequate, and that she commenced the law action without knowledge thereof. It is material upon this point to determine only whether, at the time of the commencement of the law action, plaintiff had knowledge of all of the facts upon which she had a right to rely as a ground for rescission. Manifestly, at the time of commencing her action at law, she desired to retain the land, and claim damages. If it were conceded that plaintiff abandoned her action at law and sought relief in equity because of information acquired after the former was commenced, she must, in view of the conclusion already announced, be deemed to have elected to rely upon her remedy at law. Having failed to establish, by competent proof, that the available water supply for the irrigation of the land in question did not exist, her only ground for relief is the alleged representation of defendant that each acre of the land would be irrigated. She had full knowledge of this fact long before she commenced her action for damages, and more than a year before her amended and substituted petition was filed in equity. She had a right to a remedy at law for damages, and also to rescind, and recover the price paid for the land. The two remedies are, however, necessarily inconsistent. The pursuit of one precludes pursuit of the other.

Plaintiff commenced her action for damages with full knowledge that at least 104 acres of the tract purchased could not be irrigated. This constitutes the only ground upon which a right of rescission existed. The commencement of an action at law, with full knowledge of the alleged fraud, was a conclusive election to affirm the contract and claim damages, and estopped the plaintiff from

changing the form of her action to a suit in equity for rescission, based upon the same facts. *Theusen v. Bryan*, 113 Iowa 496; *Wokoun v. Jameson*, 183 Iowa 956; *Tidgwell v. Bouma*, 176 Iowa 47; *Barnes v. Century Sav. Bank*, 165 Iowa 141, 174; *Kearney M. & E. Co. v. Union Pac. R. Co.*, 97 Iowa 719; *Zimmerman v. Robinson & Co.*, 128 Iowa 72; *Seeley v. Seeley-Howe-Le Van Co.*, 130 Iowa 626; *Blank v. Independent Ice Co.*, 153 Iowa 241; *Stinson v. Sneed*, (Tex.) 163 S. W. 989; *Conrow v. Little*, 115 N. Y. 387 (22 N. E. 346); *Crook v. First Nat. Bank*, 83 Wis. 31 (35 Am. St. 17); *Capital City Bank v. Hilson*, 64 Fla. 206 (60 So. 189); *Lowenstein & Bros. v. Glass*, 48 La. 1422 (20 So. 890); *Bauman v. Jaffray & Co.*, 86 Tex. 617 (26 S. W. 260); *Matter of Garver*, 176 N. Y. 386 (68 N. E. 667); *Dziekewicz v. Butkewicz*, 35 R. I. 221 (86 Atl. 113); *Thomas v. Watt*, 104 Mich. 201 (62 N. W. 345); *Ludington v. Patton*, 111 Wis. 208 (86 N. W. 571).

III. We come now to the contention of counsel for appellant that plaintiff was guilty of inexcusable delay in commencing suit after she had knowledge, or its equivalent, of the alleged fraud or mistake. Much of the evidence referred to upon this point bears more or less directly upon the other questions discussed. The rule is well established that a party desiring rescission must commence suit therefor within a reasonable time after discovering the falsity of the representations relied upon. *Tidgwell v. Bouma*, supra; *Rawson v. Harger*, 48 Iowa 269; *German Sav. Bank v. Des Moines Nat. Bank*, 122 Iowa 737; *Barnes v. Century Sav. Bank*, supra; *Moore v. Howe*, 115 Iowa 62; *State Bank v. Brown*, 142 Iowa 190; *Johnson v. Morgan*, 178 Iowa 577. What constitutes reasonable time must, of course, be determined largely upon the facts of each particular case.

6. VENDOR AND PURCHASER: rescission: delay in bringing suit.

Before she left for Denver, plaintiff had formed some

intention of purchasing land within the East Denver
Municipal Irrigation District, and had deposited $400 with
an employee of defendant, as part payment upon a tract
which, it later developed, had been previously sold. She
knew that the land was wholly unproductive, and of in-
different value until improved by irrigation. She fully
understood that the irrigation district had yet to be or-
ganized, and bonds of the district, which would be a lien
upon the land to the extent of $50 per acre, issued and sold,
or otherwise disposed of; that the Antero reservoir was
in process of construction, but would require considerable
time and money to complete; that nothing had yet been
done in the way of repairing, enlarging, or extending the
High-Line Canal; that the exact location of the extension
had not yet been definitely fixed; that no main or lateral
ditches had been dug; and that the supply of water for
irrigation purposes depended necessarily upon the accumu-
lation of snow in the mountains and the rainfall in the
territory tributary to the South Platte River, from which
the water was diverted into the High-Line Canal. It must
have been apparent to her that the failure to organize the
district, negotiate bonds, or construct the extension of
the High-Line Canal, distributing reservoirs, and other mat-
ters necessary to the completion of the system, would result
in the land's not being irrigated, and deprive her of the
anticipated increase in the market value of the land. She
did not intend to reside upon the land; but it is apparent
from the entire record that the purchase was induced large-
ly by the anticipation of large profits to be realized from
the increased value of the land. The element of specula-
tion enters largely into the transaction.

Correspondence introduced in evidence between plain-
tiff and persons in Denver indicates that she kept in close
touch with the steps being taken to complete the system
and provide irrigation for the land. The East Denver

Municipal Irrigation District was finally established; bonds were voted and issued for $3,000,000; and a contract, entered into with the Land & Irrigation Company for the purchase of the reservoir and irrigation system when completed, was ratified. Later, in an appropriate proceeding in a court of competent jurisdiction, the organization of the district and the bonds were approved and validated. A contract was let for the repair and extension of the High-Line Canal, and considerable work was done by the contractor; but, before its completion, he became insolvent, and was unable to complete the contract. Other difficulties followed; and finally the reservoir, canal, and other property were sold to the city and county of Denver, which, it is claimed, intends to complete the system. Whether or not this will be done is not material to the present inquiry. The petition in the action for damages was filed in July, 1914, several months after plaintiff knew that a portion of the land could not be irrigated. Her amended and substituted petition in equity was not filed until the following November, somewhat over a year after she knew the facts upon which the evidence shows her entitled to rescission, if, under the evidence, she is entitled to rescission at all. Plaintiff apparently delayed giving notice of her election to rescind until she believed the proposed irrigation system was not going to be constructed and the anticipated profits realized. We are constrained to hold that she not only elected to rely upon her remedy at law, but that she was guilty of such delay in giving notice of her election to rescind, and in the commencement of her suit in equity, as to deprive her of such right.

There is nothing in the record to indicate that defendant sought to conceal any information known to him, concerning the land purchased and the contemplated scheme for irrigating same, or that he did anything to either induce plaintiff to forego investigation or to prevent her from

making full inquiry concerning the whole matter, at the time of the transaction in question or subsequently. He solicited plaintiff to go with him to the Antero reservoir for the purpose of observing fully its location and the conditions surrounding the same, and showed her the canal at various places along its course, upon their return to Denver after viewing the land, and upon a later trip to Colorado Springs.

IV. Plaintiff also claims that, if she is not entitled to rescission, the court should award her as damages the difference between the price paid for the 104-acre tract and what it would have been worth if susceptible to irrigation. No authority is cited holding that relief of this character may be awarded in an action in equity to rescind.

7. VENDOR AND
PURCHASER:
damages:
election of
remedies.

The failure of plaintiff to obtain the relief prayed does not operate to revive her action for damages upon the ground of fraud. After electing to pursue her remedy at law, she sought inconsistent relief in equity. The amended and substituted petition does not contain a prayer for alternative relief; and in any event she cannot join an action at law for damages on account of fraudulent representations, inducing the execution of a contract, with a suit to rescind upon the same ground. The two causes of action are necessarily inconsistent. Damages, therefore, upon the theory of counsel cannot be awarded in this suit.

V. Many questions discussed by counsel have not been given detailed consideration in this opinion, but they have all been carefully considered. While some of them may have controlling importance, our conclusion thereon would not cause us to reach a different result, and to properly discuss the same would unduly extend this opinion,—already too long. We have had the benefit of exhaustive briefs of counsel, and have given all questions presented the consid-

eration their relative importance demanded. For the reasons indicated, the judgment of the court below must be, and is,—*Reversed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.